**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

```
STEVE MEDINA,                    :
                                 :    Civil Action No. 05-4293 (RBK)
            Plaintiff,           :
                                 :
        v.                       :    OPINION
                                 :
STEVEN MORTON, et al.,           :
                                 :
            Defendants.          :
```

**APPEARANCES:**

> STEVE MEDINA, Plaintiff pro se
> #52653-066
> F.C.I. Fort Dix, Unit 5852
> P.O. Box 7000
> Fort Dix, New Jersey 08640

**KUGLER**, District Judge

Plaintiff Steve Medina ("Medina"), a federal prisoner currently confined at F.C.I. Fort Dix in Fort Dix, New Jersey, seeks to bring this civil action in forma pauperis under 28 U.S.C. § 1915(a). Based on his affidavit of indigence and current absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Medina's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be

granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons stated below, the Court will dismiss without prejudice the Complaint seeking damages, and will sever the habeas claim and have a separate docket established by the Clerk of the Court for plaintiff's 28 U.S.C. § 2241 petition.

I. BACKGROUND

The following factual allegations are taken from Medina's Complaint and are accepted as true for purposes of this review.

Medina alleges that, on November 3, 2004, he was issued an incident report (Code 108) for possession, manufacture, or introduction of a hazardous tool. During a search of plaintiff's room, a prison guard named Bond found a homemade weapon in a hole cut into plaintiff's mattress. The weapon was a six inch metal rod sharpened at one end with a handle made from electrical tape and shoelace. Medina had been at work behind a locked fence when the search occurred. Plaintiff was placed in detention in the Special Housing Unit ("SHU") that same day and was served with the incident report. Medina complains that by virtue of the accusations made in the incident report he "was found guilty before any due process hearing."

On November 5, 2004, Medina appeared before the Unit Disciplinary Committee ("UDC"), and as the matter involved a serious infraction carrying loss of good conduct time and other

privileges, his case was referred to the Disciplinary Hearing Officer ("DHO"). On November 8, 2004, Medina appeared before the DHO, who instructed plaintiff to address him as "judge".

Medina claims that the guard, Bond, who wrote the incident report spoke to plaintiff while he was in SHU. Bond allegedly told plaintiff that it appeared that someone had planted the contraband in Medina's mattress because anyone could have had access to plaintiff's cell. Bond also told Medina that he could not talk to him about the case because he was involved in it. Medina asserts that none of the rooms or cells in the housing units have locks on the doors; therefore, anyone of the 362 inmates in his housing unit could have planted the contraband in plaintiff's mattress.

At both his UDC and DHO appearances, Medina claims that he denied possessing the "hazardous tool". He also claims that he had requested a staff representative even though the report notes that he had waived this right. Medina alleges that the DHO, Steven Morton, screamed at him to "shut up" when plaintiff asked for his Case Manager or work supervisor to represent him.[1] The report also shows that plaintiff admitted the charge, but Medina

---

[1] Plaintiff had requested either Case Manager Reiser or his work supervisor Fentress. Reiser had told plaintiff that he would write plaintiff's request on the paperwork. Later, Reiser allegedly told plaintiff that neither he, Fentress, or any other staff member from his unit team could represent him. Medina alleges that Reiser has a history of being hated by the inmates and is often referred to as "klansman" or "redneck".

claims that he never admitted his guilt. He told DHO Morton that he had never seen the "weapon".

Medina further alleges that the DHO hearing was conducted in a hostile manner. He claims that DHO Morton kept screaming at him to "shut up" and said that he would have to find plaintiff guilty. Medina states that he gave up trying to defend himself since it was apparent that the DHO had made up his mind already. He claims that he was denied due process and the opportunity to defend himself or to have a staff representative as requested.

The DHO found plaintiff guilty of the charge and imposed the following sanctions: 60 days disciplinary segregation; 40 days loss of good conduct time; 270 days forfeit of good conduct time; and a disciplinary transfer. This was plaintiff's first incident report in the 77 months of his confinement. Medina was in SHU from November 3, 2004 through December 29, 2004.

Medina states that he has exhausted his administrative remedies with respect to this incident. On January 6, 2005, the Regional Office rejected plaintiff's administrative appeal as untimely. Plaintiff was allowed the opportunity to provide staff verification that his untimeliness was not his fault. Medina states that he did not receive the DHO findings until February 23, 2005, although the DHO had rendered a decision on November 12, 2004. Medina had asked Reiser to corroborate that the

untimeliness was not plaintiff's fault, but Reiser would not help him.

On February 25, 2005, Medina mailed his BP-11 form to Central Office Appeal; however, the form was returned because Reiser had given Medina the wrong address. Medina re-mailed the BP-11 form with the correct address on June 7, 2005. The Central Office rejected the appeal notice on June 15, 2005 as untimely.

In his Complaint, Medina seeks injunctive relief, namely, to have a DHO re-hearing with an impartial hearing officer and to be represented by a staff representative during the re-hearing. Medina further requests that the incident report and the resulting sanctions be expunged from his prison record. Finally, Medina seeks money damages against each named defendant in the amount of $30,000.00 compensatory damages and $30,000.00 punitive damages. He acknowledges that his action for relief may be construed as a habeas petition under 28 U.S.C. § 2241, except with respect to the requested relief of money damages.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss

any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.[2]

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must assume the truth of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff.  Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Division, 411 F.3d 427, 431 (3d Cir. 2005).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the

---

[2] Medina should also be aware that the PLRA requires Courts to determine whether a prisoner has, on three or more prior occasions while incarcerated or detained in any facility, brought an action or appeal in federal court that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted.  If so, the prisoner is precluded from bringing an action in forma pauperis unless he or she is under imminent danger of serious physical injury.  28 U.S.C. § 1915(g). It does not appear that Medina has filed any lawsuits which were dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, at this time.

former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).  A complaint that sets forth facts which affirmatively demonstrate

that the plaintiff has no right to recover is properly dismissed without leave to amend.  Grayson, 293 F.3d at 106.

### III.  BIVENS ACTIONS

Medina alleges that the defendants violated his right to due process with respect to the prison disciplinary proceedings.  He seeks money damages.  This claim may be construed as an action under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) and 28 U.S.C. § 1331.

In Bivens, the Supreme Court held that one is entitled to recover monetary damages for injuries suffered as a result of federal officials' violations of the Fourth Amendment.  In doing so, the Supreme Court created a new tort as it applied to federal officers, and a federal counterpart to the remedy created by 42 U.S.C. § 1983.[3]  The Supreme Court has also implied Bivens damages remedies directly under the Eighth Amendment, see Carlson v. Green, 446 U.S. 14 (1980), and the Fifth Amendment, see Davis v. Passman, 442 U.S. 228 (1979).  But "the absence of statutory relief for a constitutional violation does not necessarily mean

---

[3] Bivens actions are simply the federal counterpart to § 1983 actions brought against state officials who violate federal constitutional or statutory rights.  Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004), cert. denied, 543 U.S. 1049 (2005).  Both are designed to provide redress for constitutional violations.  Thus, while the two bodies of law are not "precisely parallel", there is a "general trend" to incorporate § 1983 law into Bivens suits.  Chin v. Bowen, 833 F.2d 21, 24 (2d Cir. 1987)).  Therefore, this Court will analyze plaintiff's Bivens claims by reference to § 1983 case law.

that courts should create a damages remedy against the officer responsible for the violation." Schreiber v. Mastrogiovanni, 214 F.3d 148, 152 (3d Cir. 2000) (citing Schweiker v. Chilicky, 487 U.S. 412 (1988)).

In order to state a claim under Bivens, a claimant must show (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law. See Mahoney v. Nat'l Org. For Women, 681 F. Supp. 129, 132 (D. Conn. 1987)(citing Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155-56 (1978)).

IV.   ANALYSIS

Here, Medina alleges that he was not afforded his basic due process rights with respect to his prison disciplinary hearing. Specifically, Medina alleges that the DHO had made up his mind about plaintiff's guilt before the hearing commenced and would not allow plaintiff to defend himself. Medina supports this allegation by noting that DHO Morton kept telling plaintiff to "shut up" so that eventually plaintiff did not defend himself. Further, Medina alleges that he was denied the right to a staff representative.

To support a denial of procedural due process claim, Medina must demonstrate that the procedures afforded him fell short of the requirements enunciated in Wolff v. McDonnell, 418 U.S. 539

(1974).[4]  Jackson v. Johnson, 15 F. Supp.2d 341, 351 (S.D.N.Y. 1998).  See Sandin v. Conner, 515 U.S. 472, 487 (1995). In Wolff v. McDonnell, the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) the right to an impartial hearing; (3) assistance from an inmate or staff representative if the charged inmate is illiterate or if complex issues are involved; (4) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals";[5] and (5) written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action.  Wolff, 418 U.S. at 563-72.

With regard to the claim that Medina was denied a staff representative, an inmate in a prison disciplinary hearing has no

---

[4]  In Wolff, the Supreme Court held that, while prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment.  Id. at 556-57; Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

[5]  However, inmates do not have an absolute federal constitutionally-protected right to confront and cross-examine witnesses at their prison disciplinary hearings.  Wolff, 418 U.S. at 567-68.  See also Baxter v. Palmigiano, 425 U.S. 308, 321-22 (1976); Young v. Kann, 926 F.2d 1396, 1404 (3d Cir. 1991); Sanchez v. Roth, 891 F. Supp. 452, 458-59 (N.D.Ill.1995); Harrison v. Pyle, 612 F. Supp. 850, 854-55 (D. Nev. 1985).

constitutional right to counsel.  However, in cases where the inmate is illiterate, where the issues are complex making it unlikely that the inmate will be able to collect and present evidence at his hearing, or when other circumstances warrant it, due process may require that a prisoner be permitted assistance of an inmate or staff member to enable him to prepare his defense.  <u>Wolff</u>, 418 U.S. at 570; <u>Von Kahl v. Brennan</u>, 855 F. Supp. 1413, 1426 (M.D. Pa. 1994).  This requirement has been codified in the BOP regulations.  Section 541.17(b) provides that "[t]he Warden shall provide an inmate the service of a full time staff representative to represent the inmate at the hearing before the Disciplinary Hearing should the inmate so desire."  28 C.F.R. § 541.17(b).

The regulation further states that the reporting officer, investigating officer, or witnesses may not act as a staff representative.  The Warden may also exclude staff from acting as a representative in a case where there may be a potential conflict in roles.  If the staff person selected by the inmate declines the role as representative, the inmate has the option of choosing another representative or proceeding without a staff representative.  28 C.F.R. § 541.17(b).

In this case, Medina requested several specific staff representatives, but apparently, these persons declined to represent him.  While the DHO should have appointed a staff

representative, it would not have been one selected by Medina. Thus, it would appear from the record provided by plaintiff that he then chose the option of proceeding without a staff representative.  Further, Medina is not illiterate, nor were the issues involved in his prison disciplinary action so complex that the DHO would have been required to appoint a staff representative if Medina had not requested one.  Accordingly, it would appear that a Wolff violation did not occur.

To the extent that there may have been a Wolff procedural violation, Medina may bring a Bivens action for money damages stemming from the alleged denial of procedural due process, if the procedural protection is cognizable in a § 1983 or Bivens claim.  See Wolff, supra; Henry v. Sanchez, 923 F. Supp. 1266, 1270 (C.D. Calif. 1996).  In Wolff, the Supreme Court held that, although claims for injunctive relief were barred by Preiser v. Rodriguez, 411 U.S. 475 (1973), plaintiffs were allowed to bring a damage claim because the claim was based on "damages for the deprivation of civil rights resulting from the use of the allegedly unconstitutional procedure."  Sanchez, 923 F. Supp. at 1270.  In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court reaffirmed this principle, stating that Wolff "recognized a Section 1983 claim for using the wrong procedures, not for reaching the wrong result. ... Thus, the claim at issue in Wolff

did not call into question the lawfulness of plaintiff's continuing confinement." Heck, 512 U.S. at 482-83.

When an inmate is not afforded procedural protections to which he may be entitled, the district court must determine whether the denial of due process caused the resulting deprivations for which damages are sought. See Carey v. Piphus, 435 U.S. 247, 261 (1977). A plaintiff who brings a successful § 1983 action based on a due process violation may be entitled to nominal damages even if there is no proof of actual injury. Carey, 435 U.S. at 266-67.

In this case, even if this Court were to find that Medina should have been appointed a staff representative at his DHO hearing, or that the DHO was biased as alleged, Medina is not merely challenging the constitutionality of the procedures used, but instead, is actually challenging the result of the disciplinary hearing. He seeks injunctive relief in the form of a new hearing, to have the disciplinary action expunged, and to have a staff representative appointed at the new hearing. Thus, in essence, plaintiff's action attempts to invalidate the prison disciplinary proceedings and the sanctions imposed (which resulted in the loss of good conduct time).

In Preiser, the Supreme Court held that a habeas petition is the proper mechanism for an inmate to challenge the "fact or duration" of his confinement. 411 U.S. at 498-99. The Court

extended this ruling to include a challenge to prison disciplinary proceedings that affect the length of confinement, such as the deprivation or loss of good conduct time.  Muhammad v. Close, 540 U.S. 749 (2004); Edwards v. Balisok, 520 U.S. 641 (1997).

In Edwards v. Balisok, the Supreme Court applied the lessons of Preiser and Heck[6] to a state prisoner action, seeking compensatory and punitive damages, challenging the constitutionality of procedures used in a prison disciplinary proceeding that resulted in the loss of good-time credits, but not necessarily challenging the result and not seeking the restoration of the good-time credits.  Again, the Court

---

[6]  In Heck, the Supreme Court rejected § 1983 as a vehicle to challenge the lawfulness of a criminal judgment.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has **not** been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87 (footnote omitted).  The Court further instructed district courts, in determining whether a complaint states a claim under § 1983, to evaluate whether a favorable outcome would necessarily imply the invalidity of a criminal judgment.  512 U.S. at 487.

emphasized that such a claim is not cognizable under § 1983 if a favorable outcome would necessarily imply the invalidity of the challenged judgment, there the disciplinary finding and punishment.  520 U.S. at 646-8.

Here, it is clear that Medina is challenging the result of his prison disciplinary hearing, not simply the constitutionality of the procedures used during his disciplinary proceedings. Medina seeks an expungement of the matter from his prison record and a rehearing with a staff representative, as well as money damages.  Moreover, a favorable outcome on the damages claim would necessarily imply the invalidity of the prison disciplinary finding and sanctions.  Consequently, Medina's damages claim cannot proceed until such time as the disciplinary finding is invalidated through habeas corpus or some other appropriate means.

Therefore, Medina's Complaint based on denial of disciplinary due process protections will be dismissed without prejudice.  To the extent that Medina asks this Court to construe his action as a habeas petition under 28 U.S.C. § 2241, the Court will sever the habeas claim and the Court will direct the Clerk of the Court to establish a separate docket for the § 2241 petition.[7]

---

[7] The Court notes that the § 2241 petition would be deficient under 28 U.S.C. § 2242, which requires that a petition for a writ of habeas corpus shall allege the name of the person

15

V. CONCLUSION

For all of the reasons set forth above, the Complaint seeking money damages from defendants for an alleged violation of plaintiff's prison disciplinary due process rights will be dismissed without prejudice to plaintiff reinstating such claims in the event the underlying prison disciplinary action is set aside in the future. Medina's claim for habeas relief with respect to the prison disciplinary action will be severed from this docket and a separate docket will be established by the Clerk of the Court for the § 2241 petition. The present docket will be closed and the new § 2241 docket will be opened for further proceedings. An appropriate Order follows.

```
                                    S/Robert B. Kugler
                                    ROBERT B. KUGLER
                                    United States District Judge
Dated:   March 17, 2006
```

---

who has custody over the petitioner. Indeed, the warden or administrator of the facility where the petitioner is held in custody is an indispensable party respondent, for want of whose presence the petition must be dismissed. See Morehead v. California, 339 F.2d 170, 171 (9th Cir. 1964). Therefore, the Court will allow petitioner to amend his § 2241 petition to name his custodian as the proper party respondent.